UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                  Crim. No. 25-879 JB

**HERIBERTO SALAZAR AMAYA et al.,**

    Defendants.

**UNITED STATES' OPPOSED MOTION
FOR AN ORDER DESIGNATING THIS CASE AS COMPLEX[1]**

The United States of America moves for an order: (1) designating this case as complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii); (2) ordering that Rule 16.1 of the Court's Local Rules of Criminal Procedure does not apply to this case; (3) appointing a discovery coordinator for the Defendants; and (4) permitting the parties to submit a joint proposed scheduling order within 30 days of the entry of an order designating this case as complex.

I. **BACKGROUND**

    A. **Factual**

The Heriberto Salazar Amaya ("HSA") drug trafficking organization ("DTO") is a Mexican poly-substance drug trafficking organization that operated in Albuquerque, New Mexico, Denver, Colorado, Phoenix, Arizona, Las Vegas, Nevada, Salem, Oregon, and Layton, Utah, among other places. The Drug Enforcement Administration ("DEA") has been investigating the HSA DTO and its various levels of operation since 2024. Through physical surveillance,

---

[1] As stated in n.5, some Defendants have been unable to opine on this Motion; however, at least one Defendant opposes. Please see Section II.A for the position of each Defendant.

undercover operations, including undercover buys, prospective location information warrants, trackers, financial analyses, and other special investigative techniques, including wire and electronic intercepts, DEA agents have learned that the basic structure of the HSA DTO is framed around HSA receiving orders for drugs from those in his distribution network and dispatching couriers to deliver the drugs. These distributors represented the HSA DTO's regional managers and were responsible for distributing narcotics, primarily fentanyl, down the supply chain to lower-level distributors who ultimately sold to street-level consumers. As for the couriers, they generally followed a daily schedule, which involved the use of Airbnbs, load vehicles, roving stash vehicles, and stash house locations, all coordinated by HSA, to conduct bulk deliveries to the regional managers across several metropolitan areas. This coordinated and sophisticated operation allowed the HSA DTO, which includes (1) every Defendant named in the Indictment, (2) the three defendants facing criminal complaints,[2] and (3) other defendants known and unknown, to blanket a large portion of the United States with fentanyl and other deadly drugs.

**B. Procedural**

  1. *The indictment*

On April 24, 2025, the United States charged fourteen members of the HSA DTO in a twelve-count indictment with: Count 1: 21 U.S.C. § 846: Conspiracy; Counts 2, 3, and 9: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); 18 U.S.C. § 2: Aiding and Abetting; Counts 4 and 6: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); Counts 5 and 7: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Possession with Intent to Distribute 400 Grams and More

---

[2] *See* MJ 25-941 KBM (Defendant Roberta Herrera); MJ 25-935 KBM (Defendant Misael Lopez Rubio); and MJ 25-993 KBM (Defendant Phillip Lovato).

of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); Count 8: 18 U.S.C. § 924(c)(1)(A)(i): Possessing a Firearm in Furtherance of a Drug Trafficking Crime; Count 10: 8 U.S.C. §§ 1326(a) and (b): Reentry of a Removed Alien; Count 11: 8 U.S.C. § 1324a(a)(1)(A): Unlawful Employment of Illegal Alien; and Count 12: 8 U.S.C. § 1324(a)(1)(A)(v)(I): Conspiracy to Harbor Illegal Aliens. *See* Doc. 26 ("Indictment"). Arrest warrants issued shortly thereafter.

   2. *The Takedown*

On April 28, 2025, the DEA conducted a coordinated takedown of the HSA DTO, which spanned five states: New Mexico, Arizona, Nevada, Utah, and Oregon. The DEA seized the following: (1) approximately 4,193,000 fentanyl pills, (2) approximately $4,433,000.00 cash, (3) approximately 79 pounds of meth, (4) approximately 4.5 kg of heroin, (5) approximately 7.5 kg of cocaine, (6) approximately 11.5 kg of fentanyl powder, (7) approximately 41 weapons, some fully automatic conversion devices, and some without serial numbers ("ghost guns"), and (8) seven vehicles.

   3. *The Arrests and Current Deadlines*

Given the large-scale nature of the five-state operation, and with several Defendants spread out across those five states, the DEA was unable to arrest all indicted Defendants on the same day. Nonetheless, at the time of this Motion, all indicted Defendants have been apprehended. Beginning on April 28, 2025, law enforcement arrested Defendant Heriberto Salazar Amaya in Oregon, where he first appeared in the United States District Court for the District of Oregon. On April 29, 2025, this Court received his Rule 5 documents, and he is currently pending transportation to the District of New Mexico. *See* Doc. 61.

Similarly, on April 28, 2025, Defendant George Navarrete-Ramirez was arrested in Arizona and made his initial appearance in the United States District Court for the District of

Arizona. His Rule 5 documents were received by the Court on May 2, 2025, and his intial appearance in the District of New Mexico is scheduled for May 14, 2025 in Las Cruces. *See* Doc. 105.

As for the other Defendants, between April 28, 2025 and May 9, 2025, Defendants Cesar Acuna-Moreno, Vincent Montoya, David Anesi, David Altamirano Lopez, Kaitlyn Young, Brian Sanchez, Alan Singer, Nicholas Tanner, Alex Anthony Martinez, Jose Luis Marquez, and Francisco Garcia were arrested and made their initial appearances in the District of New Mexico, with nine of the 11 arraigned at the time of this Motion.[3]

On May 5, 2025, the Court entered an order setting conditions of release for Defendant Brian Sanchez. *See* Doc. 128. On May 7, 2025, the Court detained Defendant David Anesi and entered amended orders of detention as to Defendants Cesar Acuna-Moreno, Vincent Montoya, Nicholas Tanner, and David Altamirano Lopez. *See* Docs. 136, 138, 139, 140, 141. On May 8, 2025, the Court detained Defendants Alex Anthony Martinez and Jose Luis Marquez. *See* Docs. 143 and 147.

As for discovery, the Court entered standard discovery orders on April 30, 2025 as to Defendants Cesar Acuna-Moreno, Vincent Montoya, David Anesi, and David Altamirano Lopez; on May 5, 2025 as to Defendants Kaitlyn Young, Brian Sanchez, Alan Singer, and Nicholas Tanner; and on May 8, 2025 as to Defendant Jose Luis Marquez. Those orders give the United States 14 days to turn over discovery. *See* Docs. 68, 123, and 146. The United States anticipates that a discovery order for Defendants Bruce Sedillo and Francisco Garcia will issue on May 15, 2025. *See* Docs. 116 and 152. And for George Navarrete-Ramirez about May 16, 2025. Heriberto

---

[3] The arraignment/detention hearing for Defendant Alan Singer is set for May 14, 2025. The arraignment for Bruce Sedillo is set for May 15, 2025. The arraignment/detention hearing for Defendant Francisco Garcia is set for May 15, 2025.

4

Salazar Amaya is still enroute from Oregon.

A trial order has not been entered as of the date of this filing.

## II. ARGUMENT

### A. The positions of the parties[4]

1. Counsel for Defendants Alex Anthony Martinez (Nicholas Hart) and Kaitlyn Young (Carey Bhalla) oppose this Motion.[5]

2. Counsel for Defendants Alan Singer (Joseph Shattuck) and David Altamirano Lopez (Greogory Acton ) do not oppose this Motion.

3. Counsel for Defendants David Anesi (Diego Esquibel), Jose Luis Marquez (Timothy Cornish), Bruce Sedillo (Paul Linnenburger), Brian Sanchez (John Anderson), and Vincent Montoya (Susan L. Burgess-Farrell) have responded and have not yet taken a position.

4. Counsel for Defendants Cesar Acuna-Moreno (Marshall J. Ray) and Nicholas Tanner (Thomas Clark) have not provided their positions.

---

[4] Given the time-sensitive nature of this filing, the government concedes that counsel for defendants have had relatively limited time in which to provide their respective positions.

[5] The United States notes that counsel unsuccessfully opposed a similar motion on a less complex case involving a single 30-day wire. *See United States v. Badillo-Hernandez*, 713 F. Supp. 3d 1123 (D.N.M. 2024). More specifically, the *Badillo-Hernandez* court concluded that

> a complex case designation is the proper tool here—instead of repeatedly using a series of "ends of justice" continuances to the trial date (Doc. 85 at 4–5 & Doc. 92 at 3). *See United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009) (explaining an ends of justice continuance should be a "rarely used tool"). The interests of judicial economy and efficiency are meant to protect the Parties from litigating the same issue repeatedly while ensuring the prompt administration of justice. *United States v. Allen*, 16 F.3d 377, 378–79 (10th Cir. 1994). Here, Defendants do not oppose a series of potential "ends of justice" continuances under subsection (h)(7)(A) or later reconsideration of designating the case a complex under subsection (h)(7)(B). Doc. 85 at 4 & 6. But declining to designate this clearly complex case as "complex" now flies in the face of judicial economy (Doc. 92 at 3). Especially so given that ends of justice continuances only "afford the district court a modicum of flexibility" in managing "complex" cases. *Margheim*, 770 F.3d at 1318 (citing *Zedner v. United States*, 547 U.S. 489, 508, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006)). In fact, the Tenth Circuit has repeatedly explained that ends of justice continuances are disfavored in complex cases. *United States v. Banks*, 761 F.3d 1163, 1175 (10th Cir. 2014).

*Badillo-Hernandez*, 713 F. Supp. 3d at 1125.

5. The United States will seek concurrence from counsel for Francisco Garcia, Heriberto Salazar Amaya, and George Navarrete Ramirez after these Defendants appear for their Albuquerque arraignments.

**B. This Case is Complex**

The Court must determine "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii). This case meets these requirements, and it is unreasonable to expect adequate preparation for pretrial proceedings and for the trial itself within the time limits otherwise established by the Speedy Trial Act. As this Court explained in *United States v. Loera*,

> [c]omplex cases typically involve multiple defendants, voluminous discovery, a large number of witnesses, complex legal or factual issues—or often a combination of these factors. Many multi-defendant drug-conspiracy cases are complex, because they usually involve a large number of defendants, hundreds of intercepted telephone calls, thousands of pages of linesheets, and many witnesses. It often takes a long time for the defendants in those cases to figure out whether and when to plead guilty, and which of the myriad issues they should contest with pretrial suppression motions.

No. CR 13-1876 JB, 2015 WL 13662859, at *7 (D.N.M. May 19, 2015); *C.f. United States v. Garcia*, No. CR 15-4275 JB, 2016 WL 9021830, at *9 (D.N.M. Dec. 19, 2016) (denying sole defendant's request for complex case designation). All of these factors are present here.

For starters, the Indictment features twelve counts and a staggering fourteen Defendants, charged in a year-long drug trafficking conspiracy, with several other substantive possession and distribution charges, along with immigration offenses that directly relate to the HSA DTO's operation. This offense conduct is spread across five states, with an additional three criminal complaints tied directly to HSA DTO's drug trafficking conspiracy. And as alluded to above, the

offense conduct does not end with the Indictment—the April 28, 2025 dismantlement of the HSA DTO will likely result in at least one superseding indictment. The Indictment is only the beginning for these Defendants.

Exposure aside, the discovery in this matter is substantial and itself supports a complex case designation. *See, e.g.*, *United States v. Baca*, No. CR 16-1613 JB, 2016 WL 6404772, at *33 (D.N.M. Oct. 20, 2016) (granting complex case designation and citing "massive amounts of discovery"). This investigation involved Title III intercepts on over 20 lines, dozens of search warrants, audio and video recordings, location data, and grand jury subpoenas on numeorus financial accounts and other entitites, among other things. Several Defendants also are Spanish speakers, and many recorded conversations are in Spanish but all reports are in English. The need to translate and transcribe many of the materials in this case will also require more time and effort than in typical cases, especially in light of the volume thereof.

To provide an estimate for the Court, the full set of potential discovery is best measured in gigabytes if not terabytes. This estimate does not include additional data that the government anticipates retreiving from the more than 24 electronic devices seized on April 28, 2025, with some of that data again requiring translation. Simply put, the discovery in this matter is massive, complicated, and warrants a complex case designation.

Once discovery is tendered, counsel for Defendants must have sufficient time to review the discovery with their clients. Once the discovery is reviewed, defense counsel will need a considerable period of time to advise their clients, conduct plea negotiations, file pretrial motions, and/or prepare for trial. The United States respectfully submits that defense counsel will likely require more time than the time period permitted pursuant to a standard order to undertake their review of discovery and prepare motions. No defense attorney, no matter how diligent, could meet

7

his or her own discovery obligations and motions deadlines in this matter under a standard discovery order. Even understanding the complex facts will likely require multiple meetings with Defendants.

### C. Suggested Discovery Coordinator

The government respectfully also suggests that the Court consider appointing a discovery coordinator for the team of defense counsel. This individual would be responsible for compiling discovery produced by the United States matter and disseminating it to Defendants.

## III. CONCLUSION

The United States respectfully requests that the Court: (1) designate this case as complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii); (2) order that Rule 16.1 of the Court's Local Rules of Criminal Procedure does not apply to this case; (3) appoint a discovery coordinator for the Defendants; and (4) permit the parties to submit a joint scheduling order within 30 days of the entry of an order designating this case as complex for review and acceptance by the Court.

Respectfully submitted,

RYAN ELLISON
United States Attorney

*Electronically filed on May 13, 2025*
MATTHEW J. McGINLEY
BLAKE NICHOLS
RAQUEL RUIZ-VELEZ
Assistant U.S. Attorneys
201 Third Street NW, Suite 500
Albuquerque, NM  87102
(505) 346-7274

I HEREBY CERTIFY that on May 13, 2025, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to receive notice.

*/s/*
MATTHEW J. McGINLEY
Assistant U.S. Attorney